UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MADISON MASON, *et al.*,

                          Plaintiffs,

                                          23-CV-1402 (JPO)

        -v-

ETHICAL CULTURE FIELDSTON SCHOOL, *et al.*,

                          Defendants.

MEMORANDUM AND ORDER ADOPTING REPORT & RECOMMENDATION

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    On January 24, 2025, Magistrate Judge Sarah L. Cave issued a Report & Recommendation ("R&R") concerning a motion to enforce a charging lien against a putative settlement filed by Attorney Derek Sells and his law firm, The Cochran Firm ("TCF"). (*See* ECF No. 102 ("Rep.").) Judge Cave recommends finding that TCF is not entitled to an automatic 40% contingency fee based on the settlement, as the settlement was never consummated,[1] but that it is entitled to payment on a quantum meruit basis. (Rep. at 13.) TCF objects that the settlement was consummated, and, in the alternative, that Judge Cave improperly reduced its earned fees. (ECF No. 105 ("Sells Obj") at 4, 18.) Defendants take no position on the charging lien, but object to Judge Cave's conclusion regarding the enforceability of the settlement agreement. (ECF No. 106 ("Def. Obj") at 5.)

    Having reviewed the R&R *de novo*, *see McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009), the Court agrees with Judge Cave and adopts the R&R.[2]

---

[1] The parties later reached a superseding settlement. (*See* ECF No. 106 at 5.)

[2] In the interest of judicial economy, the Court assumes familiarity with the record, omitting a lengthy background section from this memorandum and order.

1

## I. Discussion

### A. Authorship of the R&R

Sells and TCF first accuse Judge Cave of forging or somehow misrepresenting the authorship of her R&R. (Sells Obj. at 8.) Their only basis for this is that the R&R uses the word "we." (*Id.*) Sells claims that he "researched and found numerous other [R&Rs] of Judge Cave and none of them use the plural tense." (*Id.*) This argument is frivolous and, frankly, vexatious. Judge Cave has a distinguished record as a conscientious, diligent, and fair-minded judge, and Sells's misguided attack on her integrity is the only "troubling issue" the Court can discern here. (*Cf. id.*) Moreover, the inadequate research underlying this claim—the Court counts ten R&Rs by Judge Cave using "we" in the first page of Westlaw search results alone[3]— only raises questions about Sells's own claims regarding his "experience, reputation, and ability." (*Cf. id.* at 20.)

### B. Enforceability of the Settlement

Defendants and TCF agree with Judge Cave that the proper analytic framework is the four-factor test from *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985), but disagree with her balancing of those factors. Because Defendants and TCF raise the same objections, the Court considers them together.

According to *Winston*, "[t]he court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been

---

[3] It appears that Judge Cave uses both "I" and "we" in her writing. A simple Westlaw search for "'Sarah L. Cave' and 'report and recommendation' and 'we'" confirms this. There is nothing improper about it. *Cf.* The Royal *We*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/the%20royal%20we (last visited June 30, 2025). And Judge Cave is hardly the only distinguished federal judge who uses the first-person plural form in opinions. *See, e.g., Marquez v. Hoffman*, No. 18-CV-7315, 2022 WL 4076016, at *14 (S.D.N.Y. Sept. 6, 2022) (Gorenstein, Mag. J.).

partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* The factors are not "a talismanic scorecard," and "some of these factors may be disregarded when not relevant or helpful." *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 151 (2d Cir. 2022). "Under New York law, applicable here, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence." *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 267 (S.D.N.Y. 2022).

The Court agrees with Judge Cave's analysis. Unlike in *Emile v. Ethical Culture Fieldston Sch.*, No. 21-CV-3799, 2023 WL 4763233, at *2 (S.D.N.Y. July 26, 2023), three of the four *Winston* factors weigh against enforcement.[4] First, there is a draft agreement expressly defining its effective date as "the date the parties fully execute" it. (ECF No. 77-4 at 1 (June Draft); ECF No. 84-5 at 48 (September Draft); *see also* R&R at 9-10.) Lest there be any doubt that executed means signed, Defendants subsequently informed Sells that they planned to withhold payment until they had "signed agreements" "in hand." (ECF No. 84-7 at 2.) Second, the parties took no steps to partially perform the agreement once it was allegedly executed.[5]

---

[4] As in *Emile*, the fourth factor weighs slightly against enforcement, but "has relatively little weight here." *Cf.* 2023 WL 4763233, at *4.

[5] While it is true that some courts have considered the preparation of settlement drafts to be partial performance, they have done so under markedly different conditions from those here. *Cf., e.g., Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, No. 14-CV-2329, 2016 WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017) (enforcing an agreement that was read into the record by the parties in open court); *Samuel v. Bd. of Educ.*, No. 12-CV-4219, 2015 WL 10791896, at *2 (E.D.N.Y. Aug. 11, 2015), *aff'd*, 668 F. App'x 381 (2d Cir. 2016) (enforcing an agreement where the court allocated the settlement in open court and explicitly "directed defendants to send [the plaintiff] the . . . paperwork"); *Gordon v. City of New York*, No. 09-CV-04577, 2015 WL 1514359, at *6 (E.D.N.Y. Apr. 3, 2015) (enforcing a settlement stipulation "reduced to writing and signed by

This contrasts with *Emile*, where the parties immediately suspended discovery the day before a scheduled deposition. *See* 2023 WL 4763233, at *1. And third, material terms were added as late as September 2022, including a non-disparagement provision that Plaintiffs allege Sells never discussed with them. (*See* R&R at 6, 11.)[6] Unlike in *Emile*, these terms were not previously "memorialized in an email chain," and the emails that Sells and Defendants do identify only further clarify that substantive settlement negotiations were ongoing. For example, Defendants claim that Sells wrote to them via email on June 16, 2022 stating that Plaintiffs "accepted [Defendants'] last and final offer." (Def. Opp. at 10 (quoting ECF No. 31-2).) But what Sells actually wrote was that all of his putative class action clients, as a group, intended to accept Defendants' aggregate monetary offer, not that the Masons had consented to their specific portion, or to any other terms of an individual settlement agreement. (ECF No. 31-2.) Sells followed up the quoted line by instructing Defendants to "call me so that we can discuss the settlement agreements and other details." (*Id.*) Similarly, Defendants quote Sells as saying his clients had "settled" as of July 2, 2022, but the full context of that email exchange shows that the parties were still actively negotiating the terms of the "draft settlement agreement[s]." (*See* ECF No. 31-8.) Furthermore, the start of that email thread clarifies that the parties are discussing a

---

[the plaintiff's] attorney"). Here, rather than reflecting Defendants' partial performance, the exchange of initial drafts reflected ongoing negotiations, as illustrated by the fact that material terms continued to change through September 2022.

[6] Sells points to a billing entry from February 12, 2022 stating that he discussed "confidentiality and non-disparagement" with the Masons at that time. (Sells Obj. at 9-10.) But February 12, 2022 preceded the filing of this action, and even the sharing of a draft complaint with Defendants. (*See* ECF No. 1; R&R at 11.) The Court agrees with Judge Cave that it is simply not credible to believe that Sells discussed the material terms of the non-disparagement provision with Plaintiffs on that date, including "the penalties" should Plaintiffs violate that provision (*cf.* R&R at 6), even if Sells did discuss the concept of non-disparagement generally.

draft settlement agreement specific to "Serene Wright," and that "once [Sells] provide[d] any comments," the parties would then "adapt versions for the other plaintiffs." (*Id.* at 6.)

Judge Cave is therefore correct that there is no enforceable settlement pursuant to which TCF may automatically recover a 40% contingency fee.

### C. Sells's Quantum Meruit Fee

TCF also objects to Judge Cave's *quantum meruit* calculation. The Court finds no merit in TCF's objections. Judge Cave appropriately accounted for Sells's and his firm's reputation, experience, and skill in recommending an award based on a $500 hourly rate. (*See* R&R at 22-23 (noting, accurately, that Sells has previously been awarded even lower hourly rates by reviewing courts).) As explained by Judge Cave, her proposed deduction of 10% of TCF's claimed hours was entirely reasonable given the use of block billing and bills reflecting hours of internal meetings.

## II. Conclusion

For the foregoing reasons, Judge Cave's R&R dated January 24, 2025 (ECF No. 102) is hereby ADOPTED in full.

Accordingly, (1) the Cochran Firm's motion to enforce charging lien is GRANTED in part and DENIED in part, to the extent that TCF is granted a charging lien against the settlement in the amount of $48,957.50; and (2) Plaintiffs' motion for discovery is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 77.

SO ORDERED.

Dated: July 7, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge